Good morning, Your Honors. My name is John Alcorn. I'm representing the petitioner, Mr. Ahajani. Mr. Ahajani is still in the United States awaiting the decision of this court. We thank you very much for the opportunity to have oral argument today. One point I would like to clear up is that Mr. Ahajani's brother, who did testify in his immigration court proceeding, was referred to as a U.S. citizen in the government's brief on page 12. And actually, in the administrative record, it shows that the testimony is that Mr. Ahajani's brother was married to a U.S. citizen. And he, the brother, is not a U.S. citizen. His case is finished. He lost here at the Ninth Circuit on other grounds. But he's still in Los Angeles. He has not been physically removed. But he is definitely not a United States citizen. Thank you for that clarification. You're welcome, Your Honor. My main points are simply two, and they relate to the decision by the Board of Immigration Appeals. In the administrative record, page 2, which is the decision of the Board of Immigration Appeals, at the very last paragraph of that page, the author from the board says, the five-day detention, which included blows to the face and lashes to the bottom of the feet, does not rise to the level of persecution. I find that a very significant statement, and I'd like to point out to the court that the decisions, the prior decisions of this court as to what is and what is not persecution and what is. Just a minute, Counselor. Before you get to persecution, it seems to me you have to think about adverse credibility, because it doesn't matter what he says or what he suggests are his facts. If he can't be credible, we don't believe anything he says. I totally agree with that, Your Honor. My other point was whether or not he was credible. That's addressed on the very next page of the BIA's decision in the last paragraph of the decision. But before we could find – I think Judge Smith's point is before we could find that to be reversible error, we would have to overturn the adverse credibility determination. I totally agree with that, too. Okay. And, of course, the decisions give the Ninth Circuit, the prior decisions of the Ninth Circuit, give the Ninth Circuit quite a bit of latitude in reviewing an asylum application, unlike many other petitions and applications in the immigration realm. And this court, of course, has never met the petitioner, doesn't know him, only has the administrative record to look at and the transcript of the testimony. And that's why our court ought to have more of our colleagues who see the substantial evidence rule as important. I see it as quite important. So why is there not substantial evidence to sustain the adverse credibility determination? It's how this court sees the alleged inconsistencies of the testimony of the petitioner at the hearing. The immigration judge and the Board of Immigration Appeals saw those inconsistencies as major and leading to a finding of non-credibility. It's my duty as advocate for the petitioner, of course, to argue that they're not really not so major. So you're saying they don't go to the heart of the issue? I am, Your Honor. I am. Because major doesn't mean much. I guess I'm trying to figure out why doesn't the education credibility issue go to the heart of the claim? Well, the claim basically revolves around what happened to the petitioner during the demonstrations in Tehran in June of 1999 and whether or not he was denied education before or after that, whether or not there was an arrest warrant. Well, but doesn't the credibility determination really have to do with whether he was even there or not, based upon his idea of what the timeline is, whether he went to the university, when he went, when he didn't go, where he was, what he did, seems to go right to the heart of whether he could even be at the particular place he claims to be persecuted. That seems to be a hard issue. It certainly is. If he is lying about having been involved in that demonstration... No, that's not what we're focusing on. We're focusing on the discrepancy between the statements in his asylum application and his testimony as to what he was doing during the several months in Iran after the demonstration. And there does seem to me to be an inconsistency between what he said in writing and what he testified to at the hearing. And that would go to the persecution claim because one of his positions was that as a result of his participation in that demonstration, he was denied the right to continue pursuing his university education. That is true. In fact, I'm reading from page 7 of the immigration judge's opinion. It says his testimony was that after the incident in June, July 1999, he was depressed and on medication and did virtually nothing during the year following the demonstration where he allegedly participated and was detained. This testimony is in direct contradiction to his own school records that indicate he was in school during the year 1999-2000. There was no reconciliation of this inconsistency. Now, how do we overcome what the IJ found? I agree with the IJ that that does seem to be a major inconsistency. It's whether or not he's credible about his participation in the incidents in June of 1999, whether or not he's lying about having been involved in those demonstrations, whether or not he's lying about having been detained for five days and beaten. If he's lying about those things, I don't think he was, but the IJ thought his whole credibility was destroyed. As Judge Tallman, and probably I didn't say it quite as well as I could, but as Judge Tallman suggests, we're really talking about being involved in the demonstration and what the effect of the demonstration is, and his education really goes to the heart of that because he's claiming he was involved in the demonstration. As a result, he's very depressed. He's downtrodden. So what the IJ is really looking at is was he involved at all because was he really depressed? I mean, what was the actual event? That's what they're looking at. That's why this goes to the heart of the matter. I agree, and I know the IJ personally, even though I was not involved at the trial level on this, and I respect him in general very highly. And my reading of the transcript of the testimony, I can see how he came to those conclusions. During the past five years since I've had this case on appeal, I've met with the petitioner many times, and he is a difficult person to understand, and he is contradictory, even with me, his own attorney, in trying to prepare this appeal. So I can see how the IJ went to that conclusion about credibility. I'm not arguing that the IJ or the Board of Immigration Appeals made a ridiculous assumption at all. They made a rational judgment. But if they did make a rational judgment, isn't that the end of the case? Well, it's whether or not I can convince this court that the IJ and the Board of Immigration Appeals were led astray, rational as it was, by other factors surrounding the time before and after the demonstration. But if we're on a substantial evidence review, it seems to me that my colleague, Judge Gilman, has put his finger dead on the issue. Substantial evidence is hardly any evidence. And now you're suggesting he's not out of the question in what he found, but I'm going to tell you some other evidence you ought to look at. That seems to me to go around what we really need to say here. If there's substantial evidence there, it doesn't matter how much evidence there is to the contrary. Well, if this court were to come to the conclusion that perhaps a further review at the trial level is warranted and to remand it for that, then he would have an opportunity to clear up some of these things. But the only way we could do that, and Counselor, I really appreciate the candor of your argument. It's very helpful and refreshing, frankly. But the problem that I'm having is that if we must conclude that the evidence is substantial but compels the opposite result, then we can send it back. But if you agree that the determination by the decision-makers was rational, that doesn't meet the compels the opposite result standard. It's a very heavy and difficult burden, Your Honor. You've used up your time. I'll give you a minute on rebuttal, but let's hear from the government. Thank you, Mr. Alcorn. You're very welcome, sir. Ms. Carmichael, whenever you're ready. May it please the Court, Amy Carmichael for the government. The petitioner claims in this case that in 1999 he participated in a student protest in Iran and that as a result of his participation he was arrested and abused on two occasions and denied entry to college. The immigration judge and board concluded, however, that the petitioner was not credible. Because the immigration judge pointed to numerous inconsistencies in his testimony and in the documentation regarding the petitioner's claim that he actually participated in the protest or was harmed as a result of that participation, the Court should deny the petition for review. The documentation and evidence surrounding the student protest in July 1999 has numerous inconsistencies. The news articles demonstrate that the protest began on or around July 10, 1999, and petitioner claimed that he was given a warrant after his participation. He also claims that after his participation he was denied entry into school. However, the documents that he submitted demonstrate that the first warrant he was issued was dated June 10, 1999, which was nearly a month before the protest. And the document that he submitted from his school was dated July 1, 1999, and also predates the protest. He testified unequivocally that he did not attend school anywhere after the protest, and he claimed this was in part because he was so scared and depressed after his alleged detention that he could not do anything. But he also testified that he was prohibited from enrolling in the university because he had been identified as a political activist. However, the school records that he submitted show that he was enrolled in classes during the 1999 to 2000 school year. You know, I am in agreement with you as to some of this, but just because one is adverse or one, the IJ thinks the petitioner is adversely credible, he has to go through certain procedures, doesn't he, to make him adversely credible? I mean, you just can't listen to his testimony and then say he's adversely credible. Well, you've got to go through certain, if you will, little procedural things. Where in the record does it suggest that the petitioner was confronted with the record that suggests he went to the pre-university in 1999 and 2000? Let me go through my notes just a second. I've got the record, but I couldn't find where he was confronted. I believe that they spent a great deal of time discussing his school. I know they spent a lot of time discussing his school, but the big record to which we're really saying adversely credible because there's a document, I couldn't find in the record where he was confronted with this document and given a chance to explain. I believe that he was confronted about the documents that he submitted and the fact that they were inconsistent with his testimony specifically about the documents. He was confronted about whether he attended school, and there's some conflict about his timing. His testimony that he was not able to attend the university seems consistent, but when you put this document in front of it, it isn't consistent, and yet I never saw him really hit with the document. Because the confrontation is important, wouldn't you agree? Yes, Your Honor, it is. Then after confronting, then you listen to what he says about it, and then you can have some, maybe even give him corroboration opportunity, but I didn't find the confrontation. I believe, I remember when reading the record that he was confronted with some of these discrepancies, but I'm not finding in my notes offhand a page citation. I would be happy to submit something after the argument. I'm willing to look at it. I just felt like that was a pretty big discrepancy. Part of what I needed to do here, in fact, I even thought about remanding because I didn't know what to do with this adverse credibility and the failure to confront. As it relates to the medical health testimony, I'm a little worried that that's not supported by substantial evidence, the, if you will, adverse credibility determination, because the basis of the finding was a letter from NARJA's consulting services that the petitioner had been under, if you will, due to his depression, but he testified that he went there once and determined that wasn't helpful, so he quit. So he went to another therapist. So I had a tough time saying that that was exactly, if you will, not credible. It was explained. Well, the concern was that he claimed to only go to the counselor once, but the letter that he submitted from that counselor stated that he was under their care during the years 1999 and 2000, which suggested that either he … No, it said that he was under their care for depression during 1999 and 2000. Okay. Was he confronted with the idea that the summons that he got from the Iranian authorities, it was issued prior to the demonstration? Could he explain that? I believe so, but I don't have the record sites at hand. And, again, I would be happy to go back through the record and submit a document after argument to clarify whether he was actually confronted and the explanation that he provided. But I do believe that the testimony that he gave with regards to his university, he testified repeatedly that he did not attend school anywhere, that he was banned from going to school. And I do believe that the immigration judge asked him to explain the document stating that he was in school from 1999 to 2000, and he stated that that was pre-university rather than university, but it did not explain the discrepancy as to the fact that he attended school after the protest. So your position is he was given the opportunity, but what he said didn't explain the discrepancy. Right. I noticed on another subject, I gather the BIA found also in any event, even if he was creditable, that he did not suffer past persecution as a result of his interrogations in 1999 and then again in 2000. Yes, Your Honor. And what, is the government trying to defend that too? Yes. How can you say that he wasn't persecuted, especially in the 2000? He claims a chair leg was put on his neck until he almost suffocated because they were saying if you don't talk, you're dead, and then he was kicked around until he was unconscious. Is that not persecution? This Court's case law has stated that short detentions with interrogations where they receive injuries that do not require medical attention, the Court has previously found that that does not amount to past persecution, and because of this substantial evidence standard, this Court is required to find not only that it would have found the case differently, but in fact that the Board was compelled to conclude that this amounted to past persecution. But if, in fact, we are compelled to believe his testimony because we can't confirm the adverse credibility determination, then at that point everything he says has to be accepted as true, doesn't it? Yes, Your Honor. And then at that point, his treatment during the two detentions is a little bit bigger than anything we've got in a case that says it isn't past persecution. What case do you think is your best case we have? I mean, I've had those cases, and I've tried to reconcile them. I'll be fair, I'm not sure I can reconcile them. I don't know whether the Ninth Circuit ought to admit to that, but I'm not sure I can reconcile them. But it doesn't seem to me that in this particular situation that even those cases are the same. This was pretty tough if you give him credibility. I agree, Your Honor, and I do think that the most important thing is if you give him credibility. So really, your ability then to give us some record cite on confrontation as to the document, as to the pre-university from 1999 to 2000, and your ability to give us something from the record that shows he was confronted about the warrant being dated June 1999 is pretty important, right? Yes, Your Honor. If we can't find that and we find him suffered past persecution, it seems to me our ultimate result then is to remand, is it not? Yes, Your Honor, because there's other issues that the board would need to address or decide. He would then have past persecution and he'd have a presumption, but we've got some future persecution issues to talk about. Yes, Your Honor. Thank you. Counsel, I think your time is up. Thank you very much. Mr. Alcorn, I'll give you a minute on rebuttal so you can have the last word here. Despite the fact that Jim Left, the DHS counsel at trial, is an excellent attorney and that Ira Bank, the immigration judge, has much experience, there is a high burden on the adverse credibility finding on the government for confrontation and on the immigration judge. I don't think this court, in all fairness, can confirm that adverse credibility finding, and that's my final statement. Thank you. All right. Thank you very much. Counsel, if you do want to submit a letter with those citations, if you could get it to us in a week or so, that would be fine. All right. The case just argued is submitted.
judges: Gilman, Tallman, Smith